Patten v. Green.

---

## PATTEN v. GREEN.

13   325
82   217
13   325
104   164
13   325
108   315

An assessment of land as "balance of land on Rancho Arroyo de San Antonio, ten thousand and ninety acres, at four dollars per acre, forty thousand three hundred and sixty dollars," is sufficient; it appearing on the roll that the part of the ranch not assessed was comprehended within the plat of a town, certain lots in which were assessed on the same list to the same owner.

The Board of Equalization has no power to raise the valuation of land as fixed by the Assessor, without notice to the owner. The general notice, of the sitting of the Board, by publication, does not amount to the notice required.

If the Board raised the tax without proper notice to the owner, their action is void, and the assessment remains in full force.

APPEAL from the Seventh District.

Bill for injunction against the collection of taxes. The injunction was granted after notice. On the trial it was dissolved, and the complaint dismissed. Plaintiff appeals.

*Crockett & Crittenden,* and *Shattuck, Spencer & Reichert,* for Appellants.

I. An injunction is the proper remedy. (Black. on Tax Titles, 567—571; *Burnett* v. *Cincinnati,* 3 Ham. 73; *Bank of U. S.* v. *Osborn,* 9 Wheat. 738; *Anderson* v. *State of Mississippi,* 23 Miss. 459; *Lyon* v. *Hunt,* 11 Ala. 295; *Dyer* v. *Branch Bank of Mobile,* 14 Id. 622; *Palmer* v. *Boling,* 8 Cal. 388.)

II. The proceedings of the officers charged with the assessment were fatally defective, and the Sheriff had no authority to sell any land of the Appellant's. (*Ferris* v. *Coover,* 10 Cal. 632; *Powell* v. *Tuttle,* 3 Comst. 401; *Hughey* v. *Howell,* 2 Olm. 231; *Isaacs* v. *Wiley,* 12 Vt. 607; *Brown* v. *Veazie,* 25 Maine, 362; *Watcher* v. *Powell,* 6 Wheat. 119; Black. on Tax titles, Chap. 2; Revenue Act, 1857.)

1st. There was no sufficient description of the land in the original assessment roll. (*Lafferty's Lessee* v. *Byers,* 5 Ham. 458; *Lessee of Massie's Heirs* v. *Long et al.* 2 Id. 287; *Treon's Lessee* v. *Emerick,* 6 Ohio, 392; *Douglass* v. *Dangerfield,* 10 Id. 152; *Eggleson* v. *Bradford,* 10 Id. 312; *Turney* v. *Yeoman,* 16 Id. 24; *Richardson* v. *State,* 5 Blackf. 51; *Tallman* v. *White,* 2 Com. 66; *Ronkendorff* v. *Taylor's Lessee,* 4 Pet. 350; *Raymond* v. *Longworth,* 4 McLean, 481, and 14 How. 76; *Moore* v. *Brown,* 4 McLean, 211; *Ballance* v. *Forsyth,* 13 How. 18.) 2d. The act of the Board of Equalization in increasing the assessment was void. If the Board could have considered the question of value at all, there being no sufficient description, and hence no valuation, they could only do so upon complaint, and after notice, and upon proof, and the regularity of their proceedings must appear of record. (*Rex* v. *Cook,* 1 Cowp. 26; *Gilbert* v. *Columbia Turnpike Company,* 3 John. Case, 107; *Davidson* v. *Gill,* 1 East, 64; *Smith* v. *Hillman,* 1 Scam. 323; *Sharp* v. *Spier,* 4 Hill, 86; *Atkins* v. *Kinman,* 20 Wend. 249; *People ex rel. Deafries* v. *Supervisors,* 10 Cal. 344; *Commonwealth* v. *People of Cambridge,* 4 Mass. 627;

*Commonwealth* v. *Coombs,* 2 Id. 490 ; *Commissioners, etc.* v. *Clau,* 15 J. R. 537 ; *Whitney* v. *Clinton,* 14 Conn. 72.) A portion of the tax being thus illegal, the whole was so, and the Sheriff had no authority to collect any part of it. (*Clark* v. *Strickland,* 2 Curtis C. C. R. 439 ; *Stetson* v. *Rempton,* 13 Mass. 272 ; *Bangs* v. *Snow,* 1 Id. 181 ; *Dillingham* v. *Snow,* 5 Id. 547 ; *Libbey* v. *Burnham,* 15 Id. 144.) 3d. There was no description of the property in the duplicate assessment roll delivered to the Sheriff. That roll was his only authority to collect any tax from the Appellants, or to sell their property. The authorities above cited establish that an execution so levied, is levied on nothing, and that under such a levy the Sheriff could sell nothing.

`*Jackson Temple,* for Respondent.

1. Plaintiff's remedy was *certiorari* to correct the action of the Board of Equalization in so far as the Board had exceeded its jurisdiction. The proper corrections could be made, and the Board directed to charge the parties with the tax really due. (8 Cal. 58 ; 19 Wend. 56.) The description of the land assessed is sufficient. (*Palmer* v. *Boling,* 8 Cal. 384.) Appellants are estopped from denying the correctness of the description. The assessment is presumed to have been made in the usual way, *i. e.*—the Appellants gave a list of their property. (Wood's Dig. 615, Sec. 3.) The return was made within the time required by law, and the assessment roll was delivered to the Clerk of the Board of Supervisors, and kept by him in his office open to public inspection. (Wood's Dig. 617, Sec. 7.) Appellants did not go before the Board to have it corrected.

2d. The Board had power to change the valuation. (Wood's Dig. 695, Sec. 12 ; 693, Sec. 6 ; 617, Sec. 8.) Errors made by the Board, in their judicial capacity—they having jurisdiction—will not vitiate the assessment. (*Henderson* v. *Brown,* 1 Caine, 92 ; *Easton* v. *Calendor,* 11 Wend. 91 ; *The People* v. *Collins,* 19 Id. 56 ; *Haynes* v. *Meeks,* 10 Cal. 110.) They acquire jurisdiction of the person, by giving the notice, and by the law fixing the meetings of the Board. Every person listed is brought into Court. (*Hambleton* v. *Dempsey,* 20 Ohio, 168.) But if the assessment was illegally raised, the only effect is, perhaps, to render the members of the Board personally liable. (*Livingston* v. *Hollen-*

*beck*, 4 Barb. 10; *People* v. *Supervisors Alleghany*, 15 Wend. 198.) The tax is a debt due from the tax payers to the State. (*Moore* v. *Patch*, 12 Cal.) A portion of the amount claimed is acknowledged to be due—the collection should not be enjoined, until a tender has been made. (*Robinson* v. *Gaar*, 6 Cal. 273; *Hardenbergh* v. *Kidd*, 10 Id. 402; *Weber* v. *San Francisco*, 1 Id.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. and FIELD, J. concurring.

Bill filed to enjoin the collection of taxes on a tract of land in Sonoma.

Two grounds are mainly insisted on:

1. That the property was so imperfectly described on the assessment roll as to be incapable of identification.

2. That the Board of Equalization increased the valuation of the land taxed, by more than one-half, without notice to the owner.

The facts raising the first of these questions are, that a number of lots in the town of Petaluma were listed and assessed as the property of Appellants, plaintiffs below, by the Assessor of Sonoma County, on the assessment roll of 1858. The lots were separately assessed. Then follows a further assessment of the property, to the Appellants, in the following words: "Balance of land on Rancho Arroyo de San Antonio, ten thousand and ninety acres, at four dollars per acre, forty thousand three hundred and sixty dollars." The town is on a part of this ranch. Before the assessment, the Appellants had sold, not only a great many town lots, but several parcels of land lying outside of the town. The whole ranch contained originally four leagues, or some seventeen thousand seven hundred acres. Is this a sufficient description? Considering the description given to amount to this, "ten thousand acres of land being the remainder of a ranch called Arroyo de San Antonio, originally containing seventeen thousand seven hundred and ninety acres; that part not assessed being comprehended in the plat of the town of Petaluma," it would be sufficient in a deed to pass the title; and, within the case of *Palmer* v. *Boling*, (8 Cal. 388,) properly taxable by this description. We do not feel disposed to disturb that decision. The fourth section of the Act, (Wood's Digest,

616,) quoted by the Appellants, refers only to *public lands*, outside of a city, town, etc. as the context shows.

The other question is more difficult. The eighth section (p. 617) provides : " The Supervisors of the County shall constitute a Board of Equalization, of which Board the Clerk of the Board of Supervisors shall be Clerk. The Board of Equalization shall meet on the second Monday in August, and shall continue in session, from time to time, until the business of equalization presented to them is disposed of; *provided, however,* that they shall not sit after the second Monday in September. The Board of Equalization shall have power to determine all complaints made in regard to the assessed value of any property, and may change and correct any valuation, either by adding thereto or deducting therefrom, if they deem the sum fixed in the assessment roll too small or too great, whether said sum was fixed by the owner or the Assessor." We think it would be a dangerous precedent to hold that an absolute power resides in the Supervisors to tax land as they may choose, without giving any notice to the owner. It is a power liable to a great abuse. The general principles of law applicable to such tribunals, oppose the exercise of any such power. The publication of notice of the sitting of the Board amounts to no protection to the owner, for the sessions of the Board are, or may be, from the first Monday in August until the second Monday in September, and it could scarcely be expected that every tax-payer is to wait upon the Board all this time to see if his taxes are to be increased. The words of the statute seem to require a complaint, or some proceeding analogous to this; at least, that there is to be something, however informal, in the nature of a controversy or contestation, or in the nature of a judicial inquiry. There can be no considerable difficulty in giving this notice, and we think the best interests of the State require it. We are not disposed to hold these tribunals to any great strictness of procedure; but any degree of strictness, probably, would be better than to give such arbitrary power to a Board, as would authorize it, without notice or evidence, or opportunity to the tax-payer to be heard, to increase his taxes indefinitely, without any right of appeal. The case in 20 Ohio, 172, seems to be against this view, but the ruling of the Court on this point was not necessary to the de-

cision of the case, and the decision was influenced by other statutory provisions than the one which seems analogous to that in our Act. The Act of Ohio, too, appointed a single day as the time of the meeting of the Board. But according the weight of a direct adjudication to this decision, (which, however, is without explanation, and merely the conclusion of the Court,) we think it stands opposed to reason, justice, and sound policy, and to those general principles which allow a party a reasonable opportunity to be heard before his rights of property are affected by the action of any tribunal.

We hold, therefore, that the action of the Board is void in raising the tax. This leaves the assessment in full force, and we perceive no difficulty in the Tax Collector's proceeding to collect the tax. The other questions have been either determined by us before, or are not considered necessary to the decision.

The order dissolving the injunction is reversed, and the case is remanded, with directions to the Court below to dispose of the case in pursuance of this opinion.